# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| BARBARA A. HARVEY; as personal representative of the Estate of MIKE GLENDON HARVEY, deceased, } } } | |
| Plaintiff, } | |
| v. } | Case No.: 4:05-CV-1787-RDP |
| MERCK & COMPANY, INC.; ROBERT WALL; GARY HARLAN; ANGELA FINCH; MATTHEW KING; PATRICIA AIKEN; SONYA COLEY, } } } } } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiff's Emergency Motion to Remand and For Expedited Hearing (Doc. #12) filed August 31, 2005. For the reasons outlined below, the motion is due to be granted.

## I.   INTRODUCTION AND PROCEDURAL HISTORY

In this wrongful death lawsuit, Plaintiff alleges that her husband died as a result of his use of the prescription medication VIOXX for pain and inflammation. On August 23, 2005, Defendant Merck & Company, Inc. ("Merck") removed this case from the Circuit Court of Etowah County to this court on the basis of diversity jurisdiction and fraudulent joinder with respect to the resident defendants sued by Plaintiff. (Doc. #1). On this same date, Merck also filed a motion requesting that this court stay all proceedings pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("MDL"). (Doc. #4). On August 29, 2005, the court conducted a status conference in which Plaintiff made an oral motion to remand this case to state court. Shortly thereafter, Plaintiff

filed an Emergency Motion to Remand and for Expedited Hearing (Doc. #12) on August 31, 2005. Defendant filed its response (Doc. #13) on September 6, 2005, and Plaintiff filed her reply (Doc. #14) on September 7, 2005. The court conducted an expedited hearing in this case on September 15, 2005.

II.   ANALYSIS

The court has heard oral argument from the parties and has studied their filings, including the cases offered in support of their respective positions. The Eleventh Circuit addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[1] The standard is onerous because, absent fraudulent joinder, the plaintiff has the absolute right to choose her forum. That is, courts must keep in mind that the plaintiff is the master of her complaint and has the right to choose how and where she will fight her battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to

---

[1] Under the second prong of the fraudulent joinder test, the court must determine whether Plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction. The parties have stated, and the court agrees, that no issue related to this prong exists in this case. Accordingly, the court limits its analysis to the first inquiry. In relation to that issue, the parties are in agreement that the appropriate standard for the court to apply with respect to the fraud and suppression claims asserted by Plaintiff is whether there is any possibility that she can establish a cause of action against the non-diverse sales representative defendants. *Cabalceta*, 883 F.2d at 1561.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedures* § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Id.*

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* that a claim exists. The *Crowe* court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under FED.R.CIV.P. 56(b),' [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' *Id.* at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' *Id.* at 548-49. **When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.** See *id.* 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Id.* (emphasis added).

More recently, in *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named

> possibility that the plaintiff can establish any cause of action against that defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).

*Id.* at 1305; *see also Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.").

"A claim of fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence." *Parks*, 308 F.2d at 478 (citations omitted). "The burden of the removing party is a 'heavy one.'" *Crowe*, 113 F.3d at 1538 (citation omitted). Regarding the application of the fraudulent joinder standard, the Eleventh Circuit has explained:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law *might* impose liability on the facts involved.'

*Crowe*, 113 F.3d at 1541-42 (citation omitted) (emphasis added in *Crowe* opinion). In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

> The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and

4

the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*,139 F.3d 1368, 1380-81 (11th Cir. 1998).

In support of its fraudulent joinder argument, Merck has provided the court with affidavits from each of the non-diverse defendants (who are all sales representatives) sued by Plaintiff. In their affidavits, each of the sales representatives state that they did not directly provide any VIOXX or any information regarding VIOXX to either Plaintiff, Plaintiff's decedent, or Plaintiff's decedent's doctor, Dwight Harper, M.D. (Doc. #1 at Ex. E). According to Merck, these affidavits make this case factually distinguishable from the line of earlier cases relied upon by Plaintiff involving another pharmaceutical company, Wyeth, in which the court determined that fraudulent joinder had not occurred and granted the motions to remand.[2] *See, e.g., Boudreaux v. Wyeth*, United States District Court for the Northern District of Alabama, Middle Division, 4:04-CV-227-RDP, February 27, 2004 (Doc. #15); *see also Davis v. Wyeth*, United States District Court for the Northern District of Alabama, Jasper Division, 6:03-CV-3167-IPJ, February 25, 2004 (Doc. #17); *McGowan v. Wyeth, Inc.*, United States District Court for the Northern District of Alabama, Southern Division, 2:04-CV-298-TMP, February 24, 2004 (Doc. #12); *Johnson v. Wyeth*, United States District Court for the Northern District of Alabama, Southern Division, 2:04-CV-224-TMP, February 23, 2004 (Doc. #11); *Marshal v. Wyeth, Inc.*, United States District Court for the Northern District of Alabama, Southern Division, 2:04-CV-179-TMP, February 18, 2004. (Doc. #17).

---

[2]As stated during the hearing, although Defendant Merck has invited the undersigned to reconsider his earlier rulings in the *Wyeth* cases, the court is not inclined to do so.

This undisputed testimony offered by the non-diverse defendants necessarily means that Plaintiff's fraud claims, to the extent they are viable, are of a third party or indirect nature. While the general rule under Alabama law provides that "a deceit [or a fraud] must be practiced directly on the person injured . . . it is not always necessary to prove that a misrepresentation was made directly to the person who claims to be injured." *Thomas v. Halstead*, 605 So. 2d 1181, 1184 (Ala. 1992). As stated by the Supreme Court of Alabama in the *Thomas* opinion:

> While generally "[a] stranger to a transaction . . . has no right of action [for fraud]" there is an exception to this general rule: "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place."

*Thomas*, 605 So. 2d at 1184 (citing 37 C.J.S. Fraud § 60 at 344 (1943); *Sims v. Tigrett*, 229 Ala. 486, 158 So. 326 (1934)).

Merck acknowledges the existence of *Thomas*, but points out that in that case there existed at least some evidence that the individual defendant had made a misrepresentation not only to both the plaintiff's insurer and also directly to the plaintiff. Accordingly, Merck argues that the facts of *Thomas* show it was not entirely a third-party fraud case.[3] Moreover, Merck contends that subsequent cases decided by the Supreme Court of Alabama, while not expressly overturning the holding in *Thomas*, have significantly narrowed its application, and perhaps have even implicitly overruled it.

The two primary cases relied upon by Merck to support its argument that *Thomas* has been substantially limited are *Boackle v. Bedwell Constr. Co.*, 770 So. 2d 1076 (Ala. 2000) and *Delta*

---

[3]The court does not view Merck's first argument as prohibiting remand because even if *Thomas* involved some evidence of a misrepresentation made directly to the plaintiff in that case, that does not change the fact that Alabama law recognizes that a plaintiff may properly state a fraud claim based upon a representation made to a third party.

*Health Group, Inc. v. Stafford*, 887 So. 2d 887 (Ala. 2004). Having reviewed these decisions, the court disagrees with the conclusions drawn by Merck that the *Thomas* decision's recognition of the viability of an indirect fraud claim has since been limited by the Supreme Court of Alabama such that the fraud theory asserted by Plaintiff is not even an arguable one under Alabama law. Indeed, the very language of the *Delta Health Group* decision counsels against such a conclusion. There, the Alabama Supreme Court stated the following:

> We agree with Stafford that in certain limited circumstances not relevant here a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff. However, we do not read *Thomas* as excusing a plaintiff from the requirement of establishing his reliance upon that misrepresentation. *Thomas* appears to contemplate that the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party. Neither have we located any other authority that purports to excuse a plaintiff in a fraud action from establishing the element of reliance.

*Delta Health Group*, 887 So. 2d at 899. Therefore, the decision in that case actually reaffirmed the principle that, in certain limited circumstances, a plaintiff could sue for fraud over a false statement made to a third party (rather than directly to plaintiff). In finding no actionable fraud in *Delta Health Group*, the court's analysis turned upon the plaintiff's inability to establish the element requiring a plaintiff to show reliance upon the alleged misrepresentation. And with respect to that issue, *Delta Health Group* does not help Merck here because it has not provided the court with clear and convincing evidence that either Plaintiff's decedent or Dr. Harper did not rely upon alleged misrepresentations made about VIOXX by these individual sales representatives to a third party within the Alabama medical community. In other words, in this case, the court cannot say that Plaintiff's claim is not an arguable one under Alabama law.

In addressing Plaintiff's motion, this court is mindful of the Eleventh Circuit's admonishment in the area of fraudulent joinder not to delve into the merits of a plaintiff's claim "beyond determining whether it is an arguable one" under Alabama law. *Crowe*, 113 F.3d at 1538. To conclude that fraudulent joinder exists in this case would be an impermissible overreach into the substance of Plaintiff's fraud claims.[4] Given that the Alabama Supreme Court has said that, under certain circumstances, Alabama law recognizes the viability of third party fraud claims, the court cannot say that Merck has carried its burden of showing by clear and convincing evidence that Plaintiff has no possibility of succeeding on her fraud claims against the non-diverse defendants.

### III.   CONCLUSION:

For the reasons stated above, the court finds Merck has not met its heavy burden of demonstrating fraudulent joinder, and Plaintiff's Emergency Motion to Remand is due to be granted. The court will enter an order consistent with this Memorandum Opinion, remanding this case to the Circuit Court of Etowah County and mooting the request by Merck to stay the litigation.

**DONE** and **ORDERED** this 23rd day of September, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[4] The court is well aware of Merck's position that this case should be transferred to MDL and its desire for this court to stay the case pending a ruling on such a transfer request. However, the court believes that (1) it is uniquely situated to rule on the motion to remand and that it is at least equally qualified to assess the application of Alabama law to this case vis-á-vis the potential transferee court (the Eastern District of Louisiana), and (2) it is appropriate for this court to rule now.